Filed 12/10/13  Shahbazi v. Kabir CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BEHNAZ SHEILA SHAHBAZI, | |
| Plaintiff and Respondent, | G047361 |
| v. | (Super. Ct. No. 30-2009-00123661) |
| ZAMAN M. KABIR, | |
| Defendant and Appellant. | |
| BEHNAZ SHEILA SHAHBAZI, | |
| Plaintiff and Respondent, | G047773 |
| v. | (Super. Ct. No. 30-2010-00357181) |
| KABIRS INVESTMENT CORP., | O P I N I O N |
| Defendant and Appellant. | |

Appeals from judgments of the Superior Court of Orange County, Kirk Nakamura, Judge.  Affirmed in part, reversed in part and remanded.

Mashiri Law Firm and Alex Asil Mashiri, for Defendants and Appellants.

Law Offices of Foroozandeh and Majid Foroozandeh, for Plaintiff and Respondent.

\*     \*     \*

**INTRODUCTION**

Appellant Zaman Kabir returns to this court after we dismissed an earlier appeal from a default judgment as premature because a related cross-complaint remained outstanding.[1]  He now has a final judgment on the cross-complaint as well as the default judgment, and he is appealing from both.  In this appeal, he is joined by a new appellant, Kabir's Investment Corp., which also had a default judgment entered against it in a separate case.  In both cases, which have been consolidated on appeal, the respondent is Behnaz Sheila Shahbazi.

To deal with the simplest matter first, we affirm the judgment on the cross-complaint, which the court entered under Code of Civil Procedure section 631.8.[2]  As cross-complainant, Kabir failed to carry his burden of proof on what was, in essence, an action for slander.  In addition, the trial court found that his witnesses, including himself, lacked credibility, and Kabir failed to suggest to the trial court how this deficiency might be remedied.

The default judgments present more intricate problems, both procedural and substantive.  The amount of the default judgment against Kabir individually is incorrect – it includes awards for attorney fees and punitive damages to which Shahbazi is not entitled – so the judgment must go back to the trial court for recalculation.  Kabir's motion to set aside the default, however, was properly denied, and we affirm that order. As for the corporate appellant, after its notice of appeal was filed, the trial court heard its motion to set aside the default and vacate the default judgment.  The trial court had

---

[1]     *Shahbazi v. Kabir* (May 31, 2012, G044652) [nonpub. opn.].
[2]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

jurisdiction to vacate a void judgment or order while the appeal was pending, so to the extent it did that, we dismiss the appeal from that order. It appears, however, that the trial court also modified the default judgment against the corporation; it did not have jurisdiction to do so while the appeal was pending. We direct the trial court to strike any modified judgment entered during the appeal period, without prejudice to the trial court's ability to enter a new judgment once it regains jurisdiction.[3]

**FACTS**

Kabir's friends and customers, Edwin and Suzette Gam, needed a loan, which they offered to secure with two pieces of real estate, one in Oxnard and the other in Hawaii. Kabir approached Shahbazi, whom he knew had money to lend, to obtain a short-term loan for them, telling her the Gams were long-time, creditworthy customers of his.[4] He also asserted that the Oxnard property had only $309,000 in debt on it. As a secured creditor, Shabazi would be in fourth place. Shahbazi was not interested in making the loan, so Kabir told her he would guarantee it. Shahbazi knew Kabir had significant assets; relying on his promise to guarantee the loan, she lent the Gams $50,000. Kabir signed a written guarantee, promising to pay Shahbazi for "any loss she might incur as a result of this loan."

The Gams' financial condition was in fact far worse than represented. In the first place, they owed not $309,000 but more than $700,000 on the Oxnard property. They also owed over $700,000 on the property in Hawaii. Shabazi was in fifth place, not fourth, as a secured creditor. After paying only a few installments on the loan, the Gams ceased paying altogether. Eventually they filed for Chapter 13 bankruptcy protection, which was later converted to Chapter 7. Owing to her position far back in the

---

[3]     Appellants have requested judicial notice and supplemental judicial notice of documents related to yet another Shahbazi/Kabir lawsuit, one filed in 2013 regarding a fraudulent transfer. Because these documents have no bearing on the two cases now before us, we deny both requests.

[4]     Kabir and Shahbazi are both connected with the real estate business and had known each other for over 10 years.

3

line of secured creditors, Shahbazi got almost nothing from the Gams' bankruptcy. Shahbazi called upon Kabir to honor his guarantee, but Kabir refused, telling her the guarantee was unenforceable.

Shahbazi filed her complaint against Kabir for breach of contract and fraud on May 27, 2009, using the Judicial Council forms for both causes of action. Kabir answered and cross-complained on June 29, 2009. Both the answer and the cross-complaint identified Kabir's counsel, the same person who represented him at the trial of the cross-complaint.

**Default against Kabir**

Shahbazi filed her first amended complaint on March 25, 2010, again using Judicial Council forms for breach of contract and fraud. She added a third, individually drafted cause of action for breach of the covenant of good faith and fair dealing.[5] Kabir failed to answer, and his default on the amended complaint was entered on May 5, 2010.

Kabir moved to set aside the default on June 3, 2010, claiming he had not been served with the first amended complaint. Although the motion promised a "detailed declaration" from counsel to support the motion, no such declaration materialized.[6] The court denied the motion to set aside the default.

A default prove-up hearing took place on November 5, 2011. The trial court entered a default judgment awarding Shahbazi a total of $241,677.63 in damages (compensatory and punitive), costs, prejudgment interest, and attorney fees against Kabir.

**Trial on the Cross-Complaint**

In June 2012, the court began a three-day bench trial on Kabir's cross-complaint, which by that time consisted of causes of action for slander and interference with prospective economic advantage. Kabir alleged that Shahbazi told two customers

---

[5]     The amended complaint also named Kabir's wife, Nahid, as a defendant.
[6]     The court also noted that Kabir had attempted to file an answer to the first amended complaint, but the answer was rejected.

4

that he was a thief who cheated on his wife and that these statements had caused these customers and others to whom the statements were repeated to refuse to do business with him.

The court granted Shahbazi's motion for a judgment under section 631.8 and prepared a detailed statement of decision. The record does not contain any objection to this statement or a motion for a new trial or to vacate the judgment.

**Default against Kabir's Investment Corp.**

In addition to the first amended complaint against Kabir, Shahbazi filed a separate complaint on March 25, 2010, against Kabir's Investment Corp. and Kabir, alleging general negligence, fraud, and breach of fiduciary duty in connection with Shahbazi's loan to the Gams. Default against Kabir's Investment Corp. was entered on June 1, 2010.[7]

After the trial on Kabir's cross-complaint in June 2012, Kabir's Investment Corp. moved to set aside the default taken against it. The basis for the motion was the failure to serve the corporation's agent for service of process. No evidence of any kind was submitted to support the motion. The court denied this motion on the ground that Kabir, the corporation's sole shareholder and director, was personally served with the complaint against the corporation, and the corporation therefore had actual notice of the lawsuit.

The court held a prove-up hearing for the corporation's default on August 17, 2012. The main issue at this hearing was Kabir's relationship to his corporation and whether the corporation could be liable for his actions. After some supplemental evidence was submitted, the court awarded Shahbazi $172,227.71 in damages, including $20,000 in punitive damages, against Kabir's Investment Corp. The court did not include

---

[7] The default form served in this case was not filled in with any amounts to be sought in default. Ten days before serving the form, Shahbazi served a notice of intent to seek punitive damages on the defendants pursuant to section 425.115. She did not, however, follow the statutory requirement for serving a defendant that has not yet appeared. (See *id.* at § 425.115, subd. (g)(1).)

5

a breakdown of the amounts awarded, except for the punitive damages. The court later clarified this order to explain that $152,227 of the total judgment against the corporation duplicated the award against Kabir in the first case and could not be collected twice.

### The Appeals

On August 30, 2012, Kabir filed a notice of appeal from the default judgment entered against him individually and from the judgment in Shahbazi's favor on the cross-complaint. On December 10, 2012, Kabir's Investment Corp. filed its notice of appeal from the default judgment entered against it. We have consolidated the two cases.

On June 27, 2013, while this appeal was pending, the trial court heard the corporation's motion to set aside the default and to vacate the judgment against it. The court denied the motion to set aside the default, but it granted the motion to vacate the judgment because Shahbazi had not complied with the notice requirements to obtain damages in excess of the $50,000 pleaded in the complaint. The judgment was therefore void. The trial court directed Shahbazi to prepare an order modifying the default judgment to encompass only the $50,000 pleaded in the complaint and prejudgment interest. The court denied Shahbazi's motion to reconsider this order on August 14, 2013. The modified default judgment, if one was prepared, is not part of the record before us.

## DISCUSSION

**I.       The Default Judgments**

We review the entry of a default judgment for jurisdictional matters and pleading defects. (*Aheroni v. Maxwell* (1988) 205 Cal.App.3d 284, 294.)

"'Substantively, "[t]he *judgment by default* is said to 'confess' the material facts alleged by the plaintiff, i.e., the defendant's failure to answer has the same effect as an express admission of the matters *well pleaded in the complaint*."' [Citation.] The 'well-pleaded allegations' of a complaint refer to ""'all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.'"" [Citations.] [¶] Because

the default *confesses* those properly pleaded facts, a plaintiff has no responsibility to provide the court with sufficient evidence to prove them – they are treated as true for purposes of obtaining a default judgment. [Citation.] But that is all the default does. There is no penalty for defaulting. 'A defendant has the right to elect not to answer the complaint. [Citation.] . . .' [¶] And if the well-pleaded allegations of the complaint do not state any proper cause of action, the default judgment in the plaintiff's favor cannot stand." (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 281-282, second italics added.)

### A.          Default Judgment against Kabir

Shahbazi's first amended complaint contained three causes of action: breach of contract (the guarantee), fraud, and breach of the covenant of good faith and fair dealing. The court awarded a default judgment against Kabir individually for $241,677.33, broken down as follows: $47,130.10 in damages, $9,033.25 in prejudgment interest, $75,547 in attorney fees, $9,967.28 in costs, and $100,000 in punitive damages.

Kabir argues that the default judgment against him in the individual case must be dismissed because the first amended complaint fails to state a cause of action against him. As we stated in *Kim, supra*, a complaint without allegations stating a cause of action will not support a default judgment. (*Kim, supra,* 201 Cal.App.4th at p. 282.)

Kabir's argument regarding the causes of action for breach of contract and fraud is meritless. Both causes of action adequately state claims for relief. The absence of the actual guarantee as an attachment to the pleading is not fatal, as Kabir argues, because Shahbazi adequately alleged the substance of its relevant terms.[8] (See 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 519, p. 651.) Likewise, Shahbazi is not required to plead facts showing performance of conditions precedent. (See § 457; 4

---

[8]          Moreover, Shahbazi made the identical allegations in the original complaint without any objection by Kabir.

7

Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 530, pp. 659-660.)[9]  Kabir's assertion to the contrary notwithstanding, Shahbazi's cause of action for fraud is pleaded with sufficient particularity.[10]

The situation is different with respect to the cause of action for breach of the covenant of good faith and fair dealing, which Shahbazi added to the first amended complaint.  "'"The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.'  [Citation.] . . . 'In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.'"  (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031-1032.)  "If there exists a contractual relationship between the parties . . ., the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract."  (*Id.* at p. 1032.)

Shahbazi has not pleaded any facts in the first amended complaint to state a cause of action for breach of any promise or covenant other than the express one to pay her $50,000 if the Gams defaulted on the loan.  A large portion of the allegations for this cause of action is devoted to the Gams' default.  Another large section deals with Kabir's statements after he became a defendant, which are absolutely privileged.  (See Civ. Code, § 47, subd. (b)(2).)  While telling Shahbazi to "go to hell" when she tried to enforce the

_____

[9]     Whether Shahbazi presented evidence that she had satisfied her performance conditions is, of course, irrelevant to determining whether she stated a cause of action.

[10]     Kabir's contention that Shahbazi failed to attach the correct Judicial Council form for fraud is baffling.  The record before us contains a copy of the Judicial Council form for fraud, PLD-C-001(3).  The form to which Kabir refers in his brief, PLD-PI-001(3), is the one for general intentional torts.  Kabir cites no authority for his argument that a plaintiff must use both forms to state a cause of action for fraud.  The fraud form contains the necessary allegations regarding intent.

guarantee may be deplorable, the guarantee does not implicitly obligate Kabir to be nice, or even civil, to Shahbazi. In short, Shahbazi has failed to state a claim for breach of the covenant of good faith and fair dealing.

This failure has only one important consequence. Otherwise it matters not, because Shahbazi's breach of contract cause of action allows her to recover the unpaid portion of the loan, plus costs and prejudgment interest. It appears, however, that Shahbazi included this cause of action in the first amended complaint under the mistaken notion that it would allow her to obtain attorney fees. The failure to state a cause of action on this theory removes the basis for this award, which was, in any case, erroneous.

There is no attorney fee provision in the guarantee itself. Instead, Shahbazi based her request for fees on *Brandt v. Superior Court* (1985) 37 Cal.3d 813 (*Brandt*). *Brandt* is an insurance bad faith case. The award of attorney fees in *Brandt* followed the "established rule that attorney fees incurred as a direct result of another's tort are recoverable damages." (*Jordache Enterprises, Inc. v. Brobeck Phleger & Harrison* (1998) 18 Cal.4th 739, 751.) But a breach of the covenant of good faith and fair dealing is a tort *only* in the insurance context. (See *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 103 [overruling *Seaman's Direct Buying Services, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752].) In all other settings, it is a breach of contract, for which only contract damages are recoverable. Tort damages, and a potential recovery of attorney fees, are available in connection with a breach of contract only if the breach also violates an independent legal duty. (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 551.)

Shahbazi did not plead any facts that would allow her to recover attorney fees under the "tort of another" rule. The first amended complaint pleaded only breach of contract and fraud directed at herself. The guarantee did not contain an attorney fee provision. The judgment must therefore be reduced by the amount of attorney fees owed

9

and, if any postjudgment interest calculation was based on that amount, by that portion of the interest.[11]

Likewise, the award of punitive damages cannot stand. A plaintiff is not permitted to plead an amount of punitive damages. (Civ. Code, § 3295, subd. (e).) And the amount pleaded in the complaint sets the ceiling on a default judgment. (*Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 493-494 (*Becker*); § 580, subd. (a).) A plaintiff wishing to obtain punitive damages in a default judgment must therefore comply with section 425.115, subdivision (b), which mandates serving the defendant with a notice regarding the plaintiff's intent to seek punitive damages in a specific sum. This statement must be served *before* a default may be taken "if the motion for default judgment includes a request for punitive damages." (§ 425.115, subd. (f).)

Nothing in the record indicates that this notice was served on Kabir or his counsel before the entry of default.[12] As a result, Kabir had no notice of the total amount of damages being sought against him. The trial court therefore did not have jurisdiction to award damages in excess of the amount pleaded or noticed under section 425.115. (See *Becker, supra*, 27 Cal.3d at p. 494.) This amount too must be subtracted from the default judgment and any adjustments to postjudgment interest must also be made.

### B.  Default Judgment against Kabir's Investment Corp.

The original default judgment against Kabir's Investment Corp. was for the lump sum of $172,227.71 in damages, including $20,000 in punitive damages. The court did not include a breakdown of the amounts awarded, except for the punitive damages.

---

[11]  Shahbazi suggested in her response that the attorney fee clause in the note was incorporated into Kabir's guarantee. Nothing in the language of the guarantee supports this suggestion, and she fails to flesh it out with argument or authority. A point that is merely asserted without support of reasoned argument and citations to authority is treated as waived. (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

[12]  In his declaration supporting the default judgment, Shahbazi's counsel stated that he served a notice of intent to seek punitive damages on Kabir on May 5, 2010, and referred to an attached exhibit, exhibit 6. Exhibit 6 is a copy of Kabir's real estate license. The list of exhibits accompanying the prove-up package does not include a punitive damages notice, and, in any event, default was entered on May 5. Even if counsel's statement was true, there is no showing the notice was served *before* entry of default.

As with the judgment against Kabir, Shabazi has not alleged any cause of action entitling her to attorney fees, and she did not properly request punitive damages before asking to have default entered. All of these issues are moot, however, because the court later vacated the default judgment against the corporation. The trial court had jurisdiction to vacate a void order, even after the filing of a notice of appeal. (See *Andrisani v. Saugus Colony Limited* (1992) 8 Cal.App.4th 517, 523.) Under those circumstances, we would ordinarily dismiss this portion of the appeal and remand it to the trial court for further proceedings. (*Ibid.*)

In this instance, however, the trial court went further and modified the default judgment against the corporation. This it did not have jurisdiction to do while the appeal was pending. (See *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189-190 [trial court's power to modify appealed judgment or order suspended while appeal pending]; § 916, subd. (a) [perfecting of appeal stays proceedings in the trial court upon judgment appealed from].) To the extent that the trial court entered a different default judgment against the corporation while the appeal was pending, that judgment is stricken.[13] When our jurisdiction ends, the trial court may revisit this issue and enter a new judgment. (See *Andrisani v. Saugus Colony Limited, supra,* 8 Cal.App.4th at p. 523 [trial court may reissue order once it obtains jurisdiction].)

**II.          Motions to Set Aside Default and Vacate Default Judgments**

We review an order on a motion to set aside a default under section 473 for abuse of discretion. (*Coyne v. Krempels* (1950) 36 Cal.2d 257, 263; *People ex rel. Lockyer v. Brar* (2005) 134 Cal.App.4th 659, 663 (*Brar*).) The order is presumed correct, and the appellant has the burden of showing abuse. (*Id.* at p. 663.) We also review a motion to vacate a default judgment for abuse of discretion. (*Strathvale Holdings v.*

---

[13]     According to the record, after denying Shahbazi's motion to reconsider the order vacating the default judgment, the court ordered her to prepare a modified judgment.

*E.B.H.* (2005) 126 Cal.App.4th 1241, 1249.)  We review questions of law de novo. (*Talley v. Valuation Counselors Group, Inc.* (2010) 191 Cal.App.4th 132, 146.)

**A.        Kabir's Motions**

Kabir failed to present the trial court with any evidence whatsoever to support setting aside the default.  It was his burden to show "mistake, inadvertence, surprise, or excusable neglect."  (§ 473, subd. (b); see also *Yarbrough v. Yarbrough* (1956) 144 Cal.App.2d 610, 614-615 ["The burden of showing that the default was entered through mistake, inadvertence, surprise or excusable neglect is on the moving party, and in the absence of such a showing the default may not be set aside."].)  Kabir made no such showing.  The court did not abuse its discretion in refusing to set aside the default.

As for the default judgment entered against Kabir, it is hornbook law that a defaulting defendant cannot participate in a prove-up hearing.  (See 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 175, p. 617.)  Kabir's sole argument for vacating the judgment, however, was that he had not received notice of the prove-up hearing.  He was not entitled to notice, so that does not support a reversal.  We have determined that the amount of the default judgment was incorrect, so we return the matter to the trial court to calculate the correct amount, but there is no reason to overturn the judgment.

**B.        Kabir's Investment Corp.'s Motion[14]**

The corporation's sole basis for the motion to set aside the default was that it had not been properly served with the complaint.  Delivery of a copy of the summons and complaint to one of the corporate officers specified by statute (such as Kabir as president) is proper service.  (§ 416.10, subd. (b).)  The trial court had jurisdiction to entertain the order, and the motion was properly denied.

---

[14]        The trial court could entertain this motion while the appeal was pending only to determine whether the default order was void.  (See *Andrisani v. Saugus Colony Limited, supra,* 8 Cal.App.4th at p. 523.)

12

**III.**        **Judgment on the Cross-Complaint**

The trial court entered judgment for Shahbazi on Kabir's cross-complaint pursuant to section 631.8 at the close of Kabir's case.[15] We review such a judgment as we would a judgment from a completed trial. The substantial evidence rule applies to questions of fact, while we review questions of law independently. (*Pettus v. Cole* (1996) 49 Cal.App.4th 402, 424-425.)

"It is a fundamental rule of appellate review that the judgment appealed from is presumed correct and '"'all intendments and presumptions are indulged in favor of its correctness.'" [Citation.]' [Citation]." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) A party can avoid the application of these presumptions and intendments by, first, requesting a statement of decision (unnecessary here because the statute required one) and then by following the procedures outlined in section 634. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1134.) Nothing in the record indicates that Kabir followed the procedures necessary to challenge the statement of decision in this case. We therefore presume the correctness of the court's judgment.

---

[15]     Section 631.8, subdivision (a) provides: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence. The court may consider all evidence received, provided, however, that the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence to rebut evidence received during the presentation of evidence deemed by the presenting party to have been adverse to him, and to rehabilitate the testimony of a witness whose credibility has been attacked by the moving party. Such motion may also be made and granted as to any cross-complaint."

The only issue remaining at time of trial was slander:  Kabir contended that Shahbazi had called him a thief and accused him of cheating on his wife in front of past customers with whom he expected to do business in the future.[16]

Kabir raises two issues in connection with the appeal from the judgment on the cross-complaint.  First, he argues the court based its decision on the lack of evidence of damages, whereas damages are presumed in a cause of action based on slander.  Second, he argues he was not given an opportunity to rehabilitate his witnesses, as required by the statute.

Slander is defined in Civil Code section 46.[17]  One of the elements of a cause of action for slander is that the statement is false.  Truth is an absolute defense to any defamation action.  (*Campanelli v. Regents of the Univ. of Cal.* (1996) 44 Cal.App.4th 572, 581-582 (*Campanelli*).)

In this case, it was established that Shahbazi called Kabir a "thief" in connection with his refusal to honor the loan guarantee.  At the default prove-up, the court awarded Shahbazi punitive damages against Kabir on her fraud claim.  Kabir's conduct was thus not only intentionally deceptive, it warranted punitive damages for oppression, fraud, or malice.[18]  Thus the "essential accuracy" of Shahbazi's charge against Kabir has been proven, irrespective of whether or not proof of damages is an element of the cause of action.  (See *Campanelli, supra,* 44 Cal.App.4th at p. 582.)

---

[16]    Demurrers to two other causes of action were sustained with leave to amend, and Kabir did not amend.  The cross-complaint ostensibly included a claim for interference with prospective economic advantage, but that cause of action was based on the effects of the allegedly slanderous statements.  Regardless of the label attached to it, a cause of action based on a false and unprivileged statement is a cause of action for defamation.  (See, e.g., *Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394 [demurrer to entire complaint for defamation and emotional distress properly sustained when plaintiff unable to state cause of action for libel.) In other words, a cause of action for interference with economic advantage based on slanderous statements was "redundant."  (See *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1379.)

[17]    Civil Code section 46 defines slander as "a false and unprivileged publication, orally uttered," which defames a person is four specific ways or "[w]hich, by natural consequence, causes actual damage."  That is, an oral statement can be slanderous even if it does not fall under the four specified categories if it is false , unprivileged, and actually damaging.

[18]    The fact that this portion of the default judgment must be reversed for lack of proper notice does not alter the court's findings with respect to proof of the allegations.

Shahbazi denied saying that Kabir cheated on his wife, but, in any event, credible evidence adduced at trial supported the truth of this statement as well.[19] The court properly granted judgment on the cause of action for slander.

As for the lack of an opportunity to rehabilitate his witnesses, Kabir did not suggest to the trial court, and does not suggest to us, how he might have accomplished this herculean task. Other than himself, Kabir's witnesses consisted of the couple to whom Shahbazi made the allegedly slanderous statements, Amir and Jade Soltani.[20] At trial, the Soltanis managed to thoroughly discredit themselves by admitting on the stand that written statements they had made under penalty of perjury and had notarized were false. The inconsistencies between their deposition testimony and their trial testimony did not assist their credibility. The trial court also found Kabir's testimony not credible, in light of contrary deposition testimony.

During the argument regarding the motion for judgment, Kabir never requested leave to reopen the case to present additional evidence or to rehabilitate his discredited witnesses. He made no offer of proof as to what this rehabilitating evidence would be. He therefore waived the opportunity provided by the statute to do so. (See *Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1337; *People v. Mobil Oil Corp.* (1983) 143 Cal.App.3d 261, 272, 274.)

## DISPOSITION

The judgment on the cross-complaint is affirmed. The orders entering defaults against Kabir and Kabir's Investment Corporation are affirmed. The default judgment entered against Kabir is reversed, and the matter is remanded to the trial court to recalculate the amount of the default judgment, omitting punitive damages and attorney fees, and to enter the modified judgment against Kabir. The appeal from the

---

[19] Kabir testified that he had not cheated on his wife, but the court determined that Kabir was not a credible witness.

[20] A third witness, who was slated to testify about how she refused to do business with Kabir because of the statements, failed to show up for trial.

15

default judgment entered against Kabir's Investment Corp. is dismissed, and the matter is remanded to the trial court to enter a new judgment once the court has regained jurisdiction. If a modified default judgment was entered against Kabir's Investment Corporation while this appeal was pending, that judgment is stricken. Appellants' request for judicial notice and supplemental request for judicial notice are denied. Respondent is to recover her costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


IKOLA, J.

16